IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**DOUGLAS W. B.,**[1] )
)
       **Plaintiff,** )
)
**vs.** ) Case No. 17-cv-1357-CJP[2]
)
**COMMISSIONER OF SOCIAL** )
**SECURITY,** )
)
       **Defendant.** )

## MEMORANDUM and ORDER

**PROUD, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff, represented by counsel, seeks judicial review of the final agency decision denying his application for Disability Insurance Benefits (DIB) pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff applied for disability benefits in July 2013, alleging disability as of December 15, 2012. He later amended his alleged onset date to October 7, 2013. After holding an evidentiary hearing, ALJ Gwen Anderson denied the application on January 17, 2017. (Tr. 65-74). The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1). Administrative remedies have been exhausted and a timely complaint was filed in this Court.

---

[1] The Court will not use plaintiff's full name in this Memorandum and Order in order to protect her privacy. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.
[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c). See, Doc. 22.

## Issues Raised by Plaintiff

Plaintiff raises the following points:

1. The ALJ erred in weighing the opinions of treating physician Dr. Wade and examining physician Dr. Mannis.

2. The ALJ failed to consider the effects of radiculopathy in plaintiff's lower extremities.

## Applicable Legal Standards

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes and regulations. For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit. 20 C.F.R. § 404.1572.

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Weatherbee v. Astrue*, 649 F.3d 565, 568-569 (7th Cir. 2011).

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. 20 C.F.R. § 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-513 (7th Cir. 2009); *Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir. 1992).

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three. If the claimant does not have a listed impairment at step three, and cannot perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job. *Rhoderick v.*

*Heckler*, 737 F.2d 714, 715 (7th Cir. 1984).

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

## The Decision of the ALJ

ALJ Anderson followed the five-step analytical framework described above.

She determined that plaintiff had not worked at the level of substantial gainful activity since the alleged onset date. He was insured for DIB through December 31, 2017. She found that plaintiff had one severe impairment, degenerative disc disease of the lumbar spine.

The ALJ found that plaintiff had the residual functional capacity (RFC) to perform work at the light exertional level, limited to occasional climbing of ramps and stairs; no climbing of ladders, ropes, or scaffolds; no work around hazardous machinery, unprotected heights, or vibrating equipment; no use of bilateral foot controls; no exposure to extreme heat or cold; and only simple and routine tasks.

Based on the testimony of a vocational expert, the ALJ concluded that plaintiff could not do his past relevant work. However, he was not disabled because he was able to do jobs which exist in significant numbers in the national economy.

### The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by plaintiff.

1. **Agency Forms**

Plaintiff was born in 1963. The amended date of onset is the day before his 50th birthday. (Tr. 186). He had attended one year of college. He had worked as an assembly line worker, truck driver, and yard worker for a hauling business.

(Tr. 190-191).

Plaintiff said he was unable to work because of back injuries suffered in a car accident. He said he had pain in his low back and lifting, standing, or sitting too long hurt him. (Tr. 212).

In June 2014, plaintiff reported that bending, standing, and sitting too long caused stiffness and pain in his low back and shooting pain down his left leg. He did a few household chores, such as washing dishes and cutting the grass. He watched TV and listened to music. He visited his mother. He could lift 25 pounds and could walk for 15 to 20 minutes. (Tr. 243-250).

### 2. **Evidentiary Hearing**

Plaintiff was represented by an attorney at the evidentiary hearing in December 2016. (Tr. 30-31).

Plaintiff had low back pain since being involved in a rear-end automobile accident in December 2012. (Tr. 19). He said he was unable to work because of "chronic, continuous pain in my lower back." Pain interfered with his sleep. He took Vicodin four times a day, which caused constipation, bloating, irritability, and sometimes nausea. He did "small household chores" such as dishes, laundry, and making beds. (Tr. 22-24). He visited his 80 year old mother. (Tr. 26).

Plaintiff had injections for his back, but they did not help. (Tr. 29).

A vocational expert (VE) also testified. The ALJ asked him a hypothetical question which corresponded to the ultimate RFC findings. The VE testified that this person could not do plaintiff's past work, but he could do other jobs such as

cleaner, hand packer, and production worker assembler. (Tr. 33-34).

The VE also testified that, if he were limited to sitting for a total of 4 hours, standing for a total of 2 hours, and walking for a total of 2 hours, and had to change positions every 20 minutes, he would be limited to less than a full range of sedentary work. (Tr. 34-35).

### 3. Medical Records

Plaintiff was seen in an emergency room following a rear-end automobile accident in December 2012. He complained of pain in his neck and back. The impression was neck and back strain. (Tr. 297-300).

An MRI of the lumbar spine was done in February 2013. This study showed mild disc bulge resulting in mild canal stenosis at L2-3; disc bulge and mild facet changes contributing to mild canal stenosis at L3-4; and disc bulges but no canal stenosis at L4-5 and L5-S1. There was near-complete loss of disc height at L5-S1. (Tr. 404-405).

Plaintiff's primary care physician was Dr. James Wade. He was seen numerous times in Dr. Wade's office for low back pain in 2013, 2014, and 2015. The office notes are check-off forms and offer few details. He was prescribed Vicodin. (Tr. 418-439, 480-499). In July 2015, Dr. Wade noted sciatica on the left. (Tr. 485).

Plaintiff saw Dr. James Gornet, an orthopedic specialist, in August 2014. X-rays of the lumbar spine showed loss of disc height at L5-S1. He recommended a new MRI. An MRI was done in December 2014. This showed minimal disc

desiccation with minimal disc bulge at L3-4; mild left neuroforaminal exit stenosis at L4-5; moderate to severe disc desiccation and vacuum gas phenomenon at L5-S1, along with mild bilateral neuroforaminal exit stenosis. Dr. Gornet noted that he may also have an annular tear on the left at L4-5 as well as centrally at L5-S1. He recommended epidural steroid injections and noted that his hope was to improve plaintiff "enough to get him back to some type of functional recovery and work." Dr. Gornet referred him to Dr. Boutwell for injections. (Tr. 453-457).

Dr. Boutwell, a pain management specialist, administered a left L4-5 epidural steroid injection in January 2015 and a left L5-S1 epidural steroid injection in February 2015. (Tr. 513-514).

In March 2016, Dr. Wade prescribed Norco for plaintiff. (Tr. 465).

Dr. Wade saw plaintiff on June 14, 2016. Plaintiff said that his back pain was "to the point that he can't sleep [and] any activity causes him to be in bed for the rest of the day due to pain." On exam, he had pain at 10 degrees of straight leg raising. He had left leg weakness with numbness and tingling and pain. There was loss of fine sensation in the left foot. Dr. Wade referred plaintiff to a physical therapist for functional capacity testing. (Tr. 555-556).

On June 27, 2016, Dr. Charles Mannis, an orthopedic specialist, performed a consultative physical exam at the request of the agency. Plaintiff was 6'1" tall and weighed 276 pounds. His gait and stance were unremarkable. There was tenderness of the left low back. Extension was limited to 75 out of 90 degrees and lateral flexion was limited to 20 out of 25 degrees in both directions. Straight leg

raising was negative. There was ½ inch atrophy of the left thigh and "definitive weakness of the left lower extremity musculature." Hypothesia to pinprick was noted over the lateral border of the left foot. The clinical impression was degenerative disc disease with probable moderate spinal stenosis of the lumbar spine affecting the left lower extremity. Dr. Mannis observed that, "Clinical findings and complaints appear to be consistent with the findings." (Tr. 520-523; 530).

On Dr. Wade's referral, a functional capacity evaluation was done on July 1, 2016. The report is included in Dr. Wade's records, but the copy is all but illegible. (Tr. 566-576).

4. **Medical Opinions**

In May 2016, Dr. Wade completed a form containing questions about plaintiff's functioning. He said that plaintiff could lift 10 pounds, could sit for a total of less than 2 hours a day, and could stand/walk for a total of less than 2 hours a day. Plaintiff was limited to occasional reaching in all directions. He could frequently perform fine and gross manipulations; "frequently" was the highest category of functioning of the four alternatives given on the form. In his narrative remarks, Dr. Wade stated "Has constant pain, difficult to sit/stand w/o changing position. At times his leg gives out completely. Pt. now has depression due to pain and limitations." (Tr. 510-511).

Dr. Mannis assessed plaintiff's RFC by filling out a form on the same day that he examined plaintiff. He said that plaintiff could occasionally lift up to 20

pounds. He did not indicate how much he could frequently lift. He could sit for 20 minutes at a time and for a total of 4 hours a day. He could stand for 20 minutes at a time and for total of 2 hours a day. He could walk for the same amount of time. He had no limitations in reaching or manipulating. He could occasionally operate foot controls. He could only occasionally perform postural activities such as balancing and stooping. Dr. Mannis indicated these limitation had been present for 4 years. (Tr. 524-529).

## **Analysis**

Plaintiff takes issue with the ALJ's weighing of the medical opinions.

ALJ Anderson gave "only partial weight" to the opinion of Dr. Mannis. (Tr. 71). Dr. Mannis was acting as a state agency consultant when he examined plaintiff. As such, he is unlikely to exaggerate his disability. *Garcia v. Colvin*, 741 F.3d 758, 761 (7th Cir. 2013).

As is detailed above, Dr. Mannis concluded that plaintiff has considerable limitations. According to the VE's testimony, a person with the limitation assigned by Dr. Mannis would be limited to less than a full range of sedentary work. Plaintiff was 54 on the date of the ALJ's decision, a fact not mentioned by the ALJ. At plaintiff's age, with no transferrable skills, he would be deemed disabled even if were capable of the full range of sedentary work. See, Medical-Vocational Guidelines ("Grids") 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table 1.

The ALJ discounted Dr. Mannis' opinion because it was "somewhat inconsistent with the totality of the evidence." She noted that examinations were

largely unremarkable until 2016; imaging showed only "mild" findings; plaintiff said he could sit for 30 minutes and did limited yardwork; and he was treated conservatively with injections and medication.

"[R]ejecting or discounting the opinion of the agency's own examining physician that the claimant is disabled, as happened here, can be expected to cause a reviewing court to take notice and await a good explanation for this unusual step." *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014). The reasons given by the ALJ here do not add up to a good explanation. Largely unremarkable examinations prior to 2016 might undermine Dr. Mannis' statement that plaintiff's limitations had been present for 4 years, but not his opinion as to plaintiff's RFC at the time of his exam. The most recent MRI was done in 2014, and, as the ALJ noted, examinations began showing more positive findings in 2016. Whether plaintiff was limited to sitting for 20 or 30 minutes at a time is immaterial as he would still be limited to less than a full range of sedentary work at 30 minutes. And, the ALJ impermissibly "played doctor" by concluding that the nature of plaintiff's treatment shows that his condition is not as serious as Dr. Mannis concluded it was. See, *Myles v. Astrue*, 582 F.3d 672, 677 (7th Cir. 2009). In addition, the ALJ ignored the fact that Dr. Wade's findings on his June 2016 exam were close to Dr. Mannis' findings.

The ALJ erred in weighing Dr. Mannis' opinion. The Court must conclude that ALJ Anderson failed to build the requisite logical bridge between the evidence and her conclusion as to plaintiff's RFC. Remand is required where, as here, the

decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012). Accordingly, a detailed analysis of plaintiff's other arguments is not required. On remand, the ALJ should properly weigh the opinions of both Dr. Mannis and Dr. Wade, and consider the combined effect of all of plaintiff's impairments.

The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes that plaintiff is disabled or that he should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard, and leaves those issues to be determined by the Commissioner after further proceedings.

## Conclusion

The Commissioner's final decision denying plaintiff's application for social security disability benefits is REVERSED and REMANDED to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of 42 U.S.C. §405(g).

The Clerk of Court is directed to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**

**DATE: October 26, 2018.**

s/ Clifford J. Proud
**CLIFFORD J. PROUD**
**UNITED STATES MAGISTRATE JUDGE**